# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT GENE MOORE, JR., | 3:19-cv-00348-MMD-CLB |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[2]** |
| ANDREW SAUL[1], Acting Commissioner of Social Security, | |
| Defendant. | |

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Robert Gene Moore's ("Moore") application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. Currently pending before the court is Moore's motion for reversal or remand. (ECF No. 15.) In this motion, Moore seeks the reversal of the administrative decision and remand for an award of benefits. (*Id.*) The Commissioner filed a response (ECF No. 17)[3], and no reply was filed. For the reasons

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[3] The Commissioner filed a "Motion for Affirmance" but docketed this document only as a response. The contents of the document are primarily that of a response. However, at the conclusion the Commissioner moves the court "to uphold" the ALJ's decision. Pursuant to Local Rule IC 2-2(b), "the electronic filing system categorizes documents by the type of 'event.' The filer must select a type of 'event' for each filed document based on the relief requested or the purpose of a document. For each type of relief requested or purpose of the document, a separate document must be filed and a separate event must be selected for that document. Examples: (i) separate documents must be filed for a response to a motion and a countermotion, with the appropriate event selected for each document, rather than filing a response and a countermotion in one document; (ii) separate documents must be filed for a motion to dismiss and a motion to

set forth herein, the court recommends that Moore's motion for remand (ECF No. 15) be denied, and the Commissioner's findings be affirmed.

## I. STANDARDS OF REVIEW

### A. Judicial Standard of Review

This court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

---

sever, rather than filing a motion to dismiss and to sever in one document." Therefore, it appears this document was either incorrectly titled or incorrectly docketed. To avoid any confusion, the court treats this document as both a response to Moore's motion to remand and as a motion to affirm the ALJ.

To determine whether substantial evidence exists, the court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

B. <u>Standards Applicable to Disability Evaluation Process</u>

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p.1 If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-

by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four in order to determine whether the individual has the RFC to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If he is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant

numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.   CASE BACKGROUND

### A.   Procedural History

Moore applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on May 27, 2014 and October 27, 2014, respectively, with an alleged disability onset date of October 29, 2013. (Administrative Record ("AR") 13, 124-127.) The application was denied initially, (AR 141), and upon reconsideration. (AR 198.) Moore subsequently requested an administrative hearing. (AR 13, 222-223.)

On January 11, 2018, Moore and his attorney appeared at a hearing before an Administrative Law Judge ("ALJ"). (AR 82-123.) A vocational expert ("VE"), also appeared at the hearing. (*Id.*) The ALJ issued a written decision on April 4, 2018, finding that Moore was not disabled because he could perform work existing in significant numbers in the national economy. (AR 13-28.) Moore appealed, and the Appeals Council denied review on April 19, 2019. (AR 1-5.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Moore filed a complaint for judicial review on August 23, 2019. (ECF No. 4.)

### B.   ALJ's Decision

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 13-28.) Ultimately, the ALJ disagreed that Moore had been disabled from October 29, 2013, the alleged onset date. (AR 28.) The ALJ held that, based on Moore's RFC, age, education, and work experience, there were jobs in the national economy that he could perform. (AR 27-28.)

In making this determination, the ALJ started at step one. Here, the ALJ found Moore had not engaged in substantial gainful activity since the alleged onset date of October 29, 2013. (AR 15-16.) At step two, the ALJ found Moore had the following severe impairments: obesity, degenerative disc disease of the lumbar spine with radiculopathy, status post left shoulder arthroscopic repair, and subacromial subdeltoid bursitis. (AR 16.)

At step three, the ALJ found Moore did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 18.)

Next, the ALJ determined Moore had an RFC to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he:

> requires a sit/stand option at approximately one hour intervals to stretch or shift positions, during which time the claimant would be off- task one-to-two minutes; the claimant is able to occasionally push and pull overhead on the left side; the claimant is unable to climb, ladders, ropes, or scaffolds, or crawl; is able to occasionally stoop, kneel, and crouch; can frequently balance and climb stairs; is capable of occasional reaching overhead on the left side; must avoid concentrated exposure to extreme cold, industrial vibration, pulmonary irritants such as fumes, odors, dusts, gases, and poorly ventilated areas; must avoid even moderate exposure to unprotected heights and hazardous or moving machinery; and the claimant is capable of occasional casual interaction with the public and coworkers.

(AR 19.)

The ALJ found Moore's impairments could reasonably be expected to cause some of the symptoms alleged, but that his statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (AR 20.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against Moore's credibility. (AR 19-26.) The ALJ then determined that Moore was unable to perform his past relevant work. (AR 26-27.)

Proceeding to step five, and relying on the testimony of the VE, the ALJ determined that Moore's age, education, past relevant work experience, and RFC would allow him to perform occupations existing in significant numbers in the national economy, such as: photocopy machine operator, office helper, and price marker. (AR 27-28.) Accordingly, the ALJ held that Moore had not been under a disability since October 29, 2013 and denied his claim. (AR 28)

## III. ISSUE

Proceeding *pro se*, Moore seeks judicial review of the Commissioner's final decision denying his DIB and SSI under Titles II and XVI of the Social Security Act. (ECF No. 15.) From what the court can discern from the motion, Moore raises the following issue for this court's review: Whether substantial evidence supports the ALJ's assessment of Moore's alleged mental and physical impairments in determining his RFC.

## IV. DISCUSSION

### A. Substantial Evidence Supports the ALJ's Finding that Moore's Alleged Mental Impairments are Non-severe

As to his alleged mental impairments, Moore argues the following: (1) the ALJ improperly addressed the opinion of Moore's treating physician, Dr. Philip Malinas; (2) the ALJ should have requested a new exam regarding mental health because the initial exam was 3.5 years old; (3) the ALJ did not take into consideration the side effects of Moore's medications; and (4) the weight of the evidence does not support the ALJ's finding that Moore did not have a disabling mental impairment. (ECF No. 15 at 5-9.)

The Commissioner argues that (1) the ALJ had no obligation to order a new examination, (2) Moore failed to identify any purported side effects of his medications or their alleged limitations, (3) the ALJ's interpretation of the evidence trumps Moore's interpretation, and (4) none of Moore's contentions show "findings [that] directed limitations more restrictive than those the ALJ assessed." (ECF No. 17 at 4-13.)

The court interprets Moore's various arguments to assert that the ALJ erred in finding Moore's mental impairments non-severe. To satisfy step two's requirement of a severe impairment, the claimant must prove the physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. *See* 20 C.F.R. §§ 404.1508, 416.908. "A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies)

to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself." SSR 85-28, 1985 WL 56856 at 4 (1985) (Program Policy Statement; Titles II and XVI: Medical Impairments That Are Not Severe.)  The step-two inquiry is a de minimis screening device used to dispose of groundless claims. *See Bowen v. Yuckert,* 482 U.S. 137, 153-54 (1987); *see also Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005); *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996).  "If a claimant is unable to show that he has a medically severe impairment, he is not eligible for disability benefits." *Bowen,* 482 U.S. at 148.

In evaluating the severity of mental impairments, a special procedure must be followed at each level of administrative review. *See* 20 C.F.R. §§ 404.1520a(a), 416.920a(a).  First, the ALJ evaluates a claimant's "pertinent symptoms, signs, and laboratory findings to determine whether" the claimant "has a medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see also* 20 C.F.R. §§ 404.1508, 416.908.  The ALJ must also "specify the symptoms, signs, and laboratory findings that substantiate the presence of [each determined] impairment and document [the] findings." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).

Rating the degree of functional limitation is a highly individualized process that requires the ALJ to consider all relevant evidence to determine the extent to which a claimant's impairment interferes with their "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(c), 416.920a(c).  The ALJ uses a point scale to rate four broad functional areas (activities of daily living, social functioning, a concentration category, and episodes of decompensation) and the degree to which the claimant's impairment interferes with each broad functional area. *Id.*; *see also Hoopai v. Astrue,* 499 F.3d 1071, 1077-78 (9th Cir. 2007) ("[T]he ALJ is required to rate the degree of functional limitations in four areas . . . The ALJ clearly met this requirement by rating and assessing [claimant's] limitations in each of these four functional areas.  The ALJ was not required to make any more specific findings of the claimant's functional limitations.")

The ALJ found the severity of Moore's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 and 12.06. (AR 17.) In making this finding, the ALJ considered whether the four broad areas of mental functioning as set out in the disability regulations for evaluating mental disorders and the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1), known as the "paragraph B" criteria were satisfied. (*Id.*)

The ALJ found Moore had mild limitations in the first functional area of activities of daily living. (*Id.*) The ALJ's opinion was based on testimony provided by Moore at the hearing, as well as his Function Report, and the opinion of the consultative examiner, Dr. Wildman. (AR 17-18; *see also* AR 82-123, 435-457, 818-824.) Next, the ALJ found that Moore had moderate limitations in the second functional area of social functioning. (AR 18.) Specifically, the ALJ relied on Moore's hearing testimony, and found the testimony not supported by the other evidence in the record. (AR 82-123.) The ALJ further relied on the consultative examiner, Dr. Wildman's assessment and notes from Moore's treating therapists in finding mild limitations in the second functional area. (AR 18, 818-824.) The ALJ found that Moore had mild limitation in the third functional area of concentration, persistence, or pace (AR 18.) Here, the ALJ relied again on Moore's testimony, Moore's Function Report (AR 82-123), and the examination of Dr. Wildman (AR 818-824). Finally, as to the fourth functional area of adapting or managing oneself, the ALJ found mild limitations. (AR 18.) The ALJ relied on Moore's own testimony and his Function Report (AR 82-123, 435-457.) Accordingly, because the ALJ determined Moore's medically determinable mental impairments did not cause at least two marked limitations or one extreme limitation, the "paragraph B" criteria were not satisfied, and Moore's mental impairments were determined to be "non-severe". (AR 18.)

At step two, the ALJ is required to rate the degree of functional limitations in each of the four areas. The ALJ clearly met the requirement by rating and assessing Moore's limitations in each of the four functional areas, as discussed above. The ALJ was not required to make any more specific findings of the claimant's functional limitations. *See*

*Hoopai,* 499 F.3d at 1077-78.  Further, while Moore makes numerous, general arguments related to his alleged mental impairments, he does not specifically identify how the ALJ erred in finding those mental impairments non-severe.  Thus, the court finds the ALJ properly assessed the "paragraph B" factors and therefore did not err in finding Moore's mental impairments non-severe.  Further, because the ALJ properly found Moore's mental impairments to be non-severe, any argument related to including those mental impairments in the RFC are moot.  *See Bowen*, 482 U.S. at 148 ("If the claimant is unable to show that he has a medically severe impairment, he is not eligible for disability benefits. In such a case, there is no reason for the Secretary to consider the claimant's age, education, and work experience.").

      B.    <u>The ALJ Properly Assessed Moore's Alleged Physical Impairments in Determining his RFC</u>

As to Moore's physical impairments, Moore alleges the ALJ made numerous factual errors and failed to properly provide him with an updated physical examination.  (ECF No. 15 at 4-6.)  Within the administrative record, an ALJ may encounter medical opinions from the three types of physicians: treating, examining, and non-examining.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  The weight given to the medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201-1202 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion.  *Holohan*, 246 F.3d at 1202. Moreover, a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [a claimant's] case record," is entitled to controlling weight.  20 C.F.R. §§ 401.1527(c)(2), 416.927(c)(2); *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).  The ALJ is not, however, bound by the conclusions of any particular physician.

11

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the Court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and the conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1991) (citation omitted). "The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Batson,* 359 F.3d at 1195.

The ALJ found that Moore's medically determinable physical impairment of obesity, degenerative disc disease of the lumbar spine with radiculopathy, status post left shoulder arthroscopic repair, and subacromial subdeltoid bursitis, did not cause more than minimal limitation for more than one year in Moore's ability to perform basic physical work activities and were "nonsevere." (AR 17.) In forming this finding, the ALJ noted that claimant reported an "approximately 80%-90% relief" from back pain after May 2015 injections and that multiple examinations from 2015 through 2017 showed "full strength" and "negative straight leg raise" tests. (*Id.* at 19-22). The ALJ cited neurosurgeon Dr. Jay Morgan's report, which specifically documented Moore's normal gait and station, mild degenerative changes in the thoracic and lumbar spine, and recommended "extensive physical therapy, weight loss, and core strengthening exercises." (*Id.* at 20). The ALJ cited Dr. Morgan's follow-up examination noting only "mild findings." (*Id.*)

Moore argues the ALJ improperly credited a medical branch block procedure with substantial pain relief, improperly considered the medical evidence and opinions, and failed to provide him with an updated physical exam. (ECF No. 15 at 4-6). Specifically, Moore alleges citing the branch block procedure was misleading because that procedure

1  was simply a diagnostic tool.  (*Id.* at 4, 9).  Moore also claims that the ALJ found that
2  Moore both did and did not have "lumbar stenosis."  (*Id.* at 5-6).  The Commissioner argues
3  the ALJ is entitled to consider Moore's own reports of pain relief, that Moore cannot
4  challenge findings that allowed him to prevail at step two, and that Moore offers no theory
5  as to how such "findings directed limitations more restrictive than those the ALJ assessed."
6  (ECF No. 17 at 5-6).  Moreover, the Commissioner notes, Moore quit physical therapy,
7  "suggesting that his symptoms and limitations were not as severe as alleged."  (*Id.* at 11).

Moore is correct that the branch block procedure is simply a diagnostic tool that provided "approximately 1-3 hours" of pain relief before "the pain gradually returned back to preprocedure pain levels." (AR 975).  However, Moore's chronic back pain responded to treatment, as evidenced by Moore's self-reported varying pain levels over time. (*Id.* at 1068-1065).  While Moore's pain fluctuated between 0 and 7 during his treatment at Premiere Physical Therapy in 2016 and 2017, over forty-four (44) sessions he reported an average pain level of 2.15 out of 10.  (*Id.*)  That evidence is consistent with Dr. Morgan's findings that Moore's physical impairments were mild.  (*Id.* at 922-24).  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an examining physician's opinion is substantial evidence where that opinion rests on his own independent examination of the claimant).  Thus, the ALJ's finding that the objective medical evidence shows Moore's chronic back pain was not of disabling severity, (*See* AR 20-21), was supported by substantial evidence.

Next, Moore correctly argues that the ALJ first noted "[Moore] was diagnosed with degenerative disc disease . . . . with moderate canal stenosis . . . at L5-S1 . . . ."  (*Id.* at 16) (citing Exhibit 42F).  However, the ALJ then stated "the medical evidence does not establish the requisite evidence of . . .  lumbar spinal stenosis as required under listing 1.04." (*Id.* at 17).  Exhibit 43F states, "Lumbar spine MRI 3/24/2015: L3-L-4 disk bulge and mild stenosis.  L4-L5, disk bulge with moderate central stenosis . . . ." (*Id.* at 1209).  Despite the ALJ's mistake in citing to the wrong exhibit, Exhibit 43 continues, stating "10/22/2016 lumbar MRI: T12 through L4: No abnormality.  L4-L5: Borderline right neural

13

foraminal narrowing. L5-S1: Small disk bulge and annular fissure without significant central or neural foraminal narrowing." (*Id.* at 1209-10). Further, Moore experienced "good improvement with bilateral transforaminal epidural steroid injection." (*Id.* at 1210). That evidence is consistent with the ALJ's overall finding that Moore was not suffering from lumbar stenosis from October 29, 2013, the alleged onset date, through April 4, 2018, the date of the ALJ's decision. (*Id.* at 17); *see Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (ALJs may consider whether treatment produced a control of pain that was satisfactory). Thus, the ALJ's finding that Moore did not have lumbar spinal stenosis was supported by substantial evidence.

Moreover, Moore's argument that he should have received an updated physical examination that "should have been offered from the social security office" is unavailing. (ECF No. 15 at 4). Moore bears the initial burden of proving disability. *Roberts*, 66 F.3d at 182. Moore must point to "specific medical evidence" in support of his claim for disability. *See* 20 C.F.R. § 404.1514. Moore cannot rely on the "social security office" to bear his burden. *See Bowen*, 482 U.S. at 146 n.5 ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."); *see also Burch v. Barnhardt*, 400 F.3d 676, 679 (9th Cir. 2005) (the burden is on the claimant to prove disability). As noted above, the ALJ followed the five-step sequential process to determine that Moore's obesity, degenerative disc disease of the lumbar spine with radiculopathy, status post left shoulder arthroscopic repair, and subacromial subdeltoid bursitis did not meet or medically equal the severity of impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. Accordingly, the ALJ's finding that Moore did not have a physical impairment of disabling severity was supported by substantial evidence.[4]

---

[4] Because the court finds that substantial evidence supports the ALJ's findings and ultimately non-disability determination, the court need not address the numerous other arguments contained in Moore's motion.

## V. CONCLUSION

Having reviewed the Administrative Record as a whole and weighing the evidence that supports and detracts from the Commissioner's conclusion, the court finds the ALJ decision was supported by substantial evidence. The court therefore recommends that Moore's motion to remand (ECF No. 15) be denied, and the Commissioner's motion to affirm (ECF No. 17) be granted.

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Moore's motion for remand (ECF No. 15) be **DENIED**; and the Commissioner's motion to affirm (ECF No. 17) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and **CLOSE THIS CASE**.

**DATED**: October 7, 2020

_____
**UNITED STATES MAGISTRATE JUDGE**